UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

THOMAS HENRY BLOOM,

Debtor.

_____/

Case No. 25-02192-swd
Hon. Scott W. Dales
Chapter 13

<u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT:   HONORABLE SCOTT W. DALES
Chief United States Bankruptcy Judge

I. INTRODUCTION

Contending that chapter 13 debtor Thomas Henry Bloom (the "Debtor") is not eligible for relief under chapter 13 given the debt limits under 11 U.S.C. § 109(e), his creditor, the Bank of Ann Arbor (the "Bank"), filed a Motion to Dismiss Chapter 13 Case (ECF No. 26, the "Motion").[1] The Debtor filed a response (ECF No. 36, the "Response"), and the court held a hearing on October 22, 2025, in Kalamazoo, Michigan, at which counsel for the Debtor and the Bank appeared. The chapter 13 trustee also appeared but took no position on the Motion.

The crux of the eligibility dispute is whether the Debtor's debt to the Bank is unliquidated, either because he has affirmative defenses to the claim or because the Bank still has access to some of its collateral.

The court heard the oral arguments of the parties and took the Motion under advisement. For the following reasons, the court finds that the Debtor is not eligible for relief under chapter 13, and, therefore, there is cause to dismiss the case.

---

[1] References to "Bankruptcy Code" or to specific statutory sections in this Memorandum of Decision and Order are to 11 U.S.C. §§ 101-1532.

## II. FACTUAL BACKGROUND

Mr. Bloom, prior to the filing of this bankruptcy case, owned Black Owl Properties, LLC, and Black Owl, LLC, (collectively "Black Owl"), along with co-owners Regan Bloom and Scott Myrick.  Response at ¶ 2.  Black Owl owned real property commonly known as 345 East Nine Mile Rd., Ferndale, Michigan, 48220 (the "Property"), which the Debtor and his co-owners operated as a restaurant.  *Id.* at ¶ 3.  To expand the business, Black Owl executed and delivered a United States Small Business Administration Note to the Bank's predecessor on December 18, 2014 (the "Note").  *See* Proof of Claim No. 2-1, Attachs. 1-3.  To secure the Note, Black Owl granted a lien on all its assets, including its liquor license, as well as a mortgage on the Property to the Bank's predecessor.  *See* Response at ¶¶ 4-5.  Additionally, the Debtor unconditionally guaranteed payment of the Note, in the original amount of $2,650,000.00.[2]  *Id.* at ¶ 3.

Six years later, Black Owl defaulted on the Note.  To avoid losing the restaurant, the Debtor signed a series of forbearance agreements with the Bank culminating in the Third Forbearance Agreement dated July 1, 2022.[3]  By signing the Forbearance Agreements, he reaffirmed the original loan documents, including the Unconditional Guarantee, through which he agreed not to challenge the Bank's commercial reasonableness in liquidating its collateral or even whether it resorted to its collateral at all. *See* Proof of Claim 2-1, Attach. 2 (Unconditional Guarantee at ¶ 6(C)).  He also waived any current claims, counterclaims, or defenses against the Bank, as of the execution of the Third Forbearance Agreement.  *See* Third Forbearance Agreement at p. 14.

---

[2] The Debtor and his co-obligors (Scott Myrick, Regan Bloom, Scott O. Myrick Revocable Trust dated January 27, 2011, Thomas H. Bloom Revocable Trust dated November 2, 2012, and Regan K. Bloom Revocable Trust dated November 2, 2012) all unconditionally guaranteed Black Owl's obligations under the Note.  *See* Response at ¶ 1.

[3] The Debtor signed the first forbearance agreement on January 28, 2020 (Motion at Ex. 1), the second on September 17, 2021 (*id.* at Ex. 2), and the third on July 1, 2022 (*id.* at Ex. 3, the "Third Forbearance Agreement") (collectively the "Forbearance Agreements").

After the Third Forbearance Agreement expired without payment in full, the Bank foreclosed on the Property by conducting a sheriff's sale on January 30, 2024. *See* Motion at ¶ 9. After applying the foreclosure sale proceeds and paying various past due city taxes, the Bank calculated the remaining balance at $690,463.42. *See Id.*, Ex. 4 at p. 6. To collect the remaining balance, the Bank filed an action against the Debtor and his co-obligors in the Oakland County Circuit Court, Case No. 2024-206252-CB (the "State Court Action"). The Debtor and his co-defendants answered the Bank's complaint, asserting affirmative defenses. *See* Motion at ¶ 12. On February 12, 2025, the Bank filed a motion for summary disposition in the State Court Action, citing the Forbearance Agreements as well as the Debtor's Unconditional Guarantee of the Note in support of summary disposition. *Id.* at ¶ 13. Before the state court could rule, however, the Debtor filed his chapter 13 petition, triggering the automatic stay and prompting the state court to stay the State Court Action. *Id.* at ¶ 15.

As a part of his voluntary petition, the Debtor scheduled the debt to the Bank at $691,556.87 on Schedule E/F, while checking the boxes for "contingent," "unliquidated," and "disputed." Additionally, the Bank has not yet foreclosed on the liquor license (also included within Black Owl's collateral package), so the parties cannot say at this point what that asset may be worth.

### III. ANALYSIS

The parties agree that the Sixth Circuit's decision in *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir. 1985), informs, if not controls, a bankruptcy court's evaluation of a chapter 13 debtor's eligibility under § 109(e). In that opinion, the Sixth Circuit explained that § 109(e) is designed "to separate those small sole proprietors who should have the benefit of Chapter 13 from those larger businesses who should not." *Id*. at 753-54. In other words,

§ 109(e) requires the court to distinguish the small fry (who may swim in the chapter 13 pond) from the big fish (who must navigate stormier seas).

Currently, as adjusted in accordance with § 104, "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $526,700 and noncontingent, liquidated, secured debts of less than $1,580,125 . . . may be a debtor under chapter 13 of this title."  11 U.S.C. § 109(e).

In general, the Sixth Circuit analogizes the eligibility analysis under § 109(e) to a district court's evaluation of the amount in controversy under 28 U.S.C. § 1332, as both statutes limit access to the federal forum.  *Pearson*, 773 F.2d at 757 (citing *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938)).  The Sixth Circuit summarized its commonsense approach: "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith."  *Id*.

Courts following *Pearson* have added a necessary and helpful judicial gloss, indicating that while eligibility initially depends on the schedules, the schedules are not conclusive if made in bad faith or if it appears to a legal certainty that the information is not correct.  *In re Redburn*, 193 B.R. 249, 255 (Bankr. W.D. Mich. 1996) (citing *Pearson*, 773 F.2d at 757).  So, to continue the aquatic metaphor, the court should initially rely on the schedules alone, but if there is something fishy about them, it must take a deeper dive.

Here, because Mr. Bloom has not scheduled any secured debt, the court need consider only the $526,700.00 cap for unsecured debt.  And, because the amount that Mr. Bloom originally scheduled for the Bank's claim on Schedule E/F ($691,556.87) exceeds the cap and approximates the principal balance reflected in Bank's Proof of Claim, the court does not doubt Mr. Bloom's

good faith in scheduling the *amount*.[4]  But, because the scheduled amount itself undermines eligibility, the court must look further to see whether the Bank's debt, added to the other substantial unsecured (and noncontingent, liquidated debt) disqualifies Mr. Bloom as a debtor under chapter 13.

The remaining issues, therefore, are whether Mr. Bloom scheduled *the nature of* the Bank's claim as "contingent" and "unliquidated" in good faith, and even if he did, whether it appears to a legal certainty that these characterizations are incorrect.  *Redburn*, 193 B.R. at 155; *cf. St. Paul Indemnity Co.*, 303 U.S. at 288-89.

Because the Bankruptcy Code does not define the terms "noncontingent" and "liquidated," courts have struggled to decipher their meaning.  As Mr. Bloom's counsel observed during last week's hearing, however, his client's argument that the debt is unliquidated is stronger than that it is contingent. He very nearly conceded that Black Owl's default triggered Mr. Bloom's liability as guarantor, which (of course) it did.  *In re Winters*, Case No. 12–10614, 2012 WL 1067696, at *3 (Bankr. E.D. Tenn. 2012).  Decades ago, Judge James D. Gregg explained:

> …it is well-settled that "a debt is non-contingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." ... Conversely, a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which *will trigger the liability of the debtor* to the alleged creditor."

*Redburn*, 193 B.R. at 259 (citations omitted).

Moreover, as Judge Jeffrey R. Hughes explained, the fact that the Bank's claim has not been reduced to judgment is immaterial to whether it is contingent, or not.  *Faulhaber*, 269 B.R. at 354-55.

---

[4] The court accepts Mr. Bloom's counsel's statement that his recent amendment to Schedule E/F erroneously reduced the Bank's claim to $1.00.  Without the clarification from counsel, the eve-of-hearing amendment would cast doubt on Mr. Bloom's good faith in characterizing the Bank's claim. *In re Faulhaber*, 269 B.R. 348, 353 (Bankr. W.D. Mich. 2001).

This leaves the thornier question of whether Mr. Bloom's debt is unliquidated, as he claims, because either (1) he cannot say how much the Bank may collect from his co-obligors; (2) the Bank has not yet liquidated all its collateral (including a valuable liquor license) so the court cannot determine the "deficiency" claim against Mr. Bloom; and (3) Mr. Bloom has asserted affirmative defenses[5] to the Bank's complaint in the State Court Action, such as unclean hands and suretyship defenses concerning mishandling of collateral.

Admittedly some cases, including *Pearson*, may have confused or at least conflated the terms "disputed," "noncontingent," and "liquidated." *Pearson*, for example, described the impact of pending collateral liquidation as follows:

> Plainly, the Pearsons could in good faith have considered that their unsecured liability was at least in dispute and could reasonably have amounted to less than $100,000 should Comprehensive and the other creditors succeed in obtaining partial or full satisfaction of their claims from the property against which they claimed a security interest.

*Pearson*, 773 F.2d at 758.

The remaining discussion in *Pearson*, however, suggests that the dispute there involved not the *amount* of the debt (which the arbitrator determined), but the *unsecured* portion of the debt.

Additionally, unlike *Pearson* where the Sixth Circuit did not consider whether the debtors waived suretyship and other defenses, here we can say for certain that Mr. Bloom's Unconditional Guarantee (and the Forbearance Agreements) effected broad waivers. *See* Third Forbearance Agreement at p. 14; *see also* Proof of Claim 2-1, Attach. 2 (Unconditional Guarantee at ¶ 6(C),

---

[5] The Debtor insists that the affirmative defenses he asserted within the State Court Action render the debt unliquidated, *see* Response at ¶ 34, but the argument falls flat: affirmative defenses admit the prima facie claim, but offer reasons collateral to the merits to contest liability. *See Cole v. Ladbroke Racing Michigan, Inc.*, 614 N.W.2d 169, 174 (Mich. Ct. App. 2000) ("An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case... It is a matter that accepts the plaintiff's allegation as true, but that denies that the plaintiff is entitled to recover on the claim."); *see also Roberge v. Hannah Marine Corp.*, 124 F.3d 199, 1997 WL 468330, *3 (6th Cir. 1997) ("An affirmative defense ... is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven.").

waiving rights and defenses regarding advertising collateral sales, conducting commercially reasonable sales, seeking satisfaction from other guarantors or any collateral, or otherwise impairing suretyship rights).

A fair reading of *Pearson* suggests that the court may consider some good faith disputes as to the nature of the debt — disputes that make it difficult to determine whether a debt is secured or unsecured, for example — in determining eligibility under § 109(e). *Pearson*, 773 F.2d at 758.

Nevertheless, while § 109(e) expressly borrows the terms "noncontingent" and "liquidated" from the definition of "claim" in § 101(5), it conspicuously omits the term "disputed" in calculating the eligibility cap. In construing the statute, the court must give effect to that omission. In persuasive authority from within our district, Judge Gregg made sense of the statute by explaining that under § 109(e) a debt may be both "disputed" and "liquidated." He did so by reference to authority holding that courts should only consider the fact that a debtor disputes the debt if the dispute is such that it makes it difficult to calculate the debt. *See Redburn*, 193 B.R. at 257 (citing *Nicholes v. Johnny Appleseed of Washington (In re Nicholes)*, 184 B.R. 82, 89 (9th Cir. B.A.P. 1995)). Here, but for Mr. Bloom's asserted defenses (many of which he waived), establishing the amount of the Bank's claim is a straightforward, mathematical exercise: consult the Note and payment history, calculate interest, and, voila, we easily establish the amount of the claim. A debt memorialized in a promissory note epitomizes a liquidated debt unlike, say, a debt arising from a personal injury tort claim. *See In re Smith*, 365 B.R. 770, 783 (Bankr. S.D. Ohio 2007) ("At one end of the spectrum lies the classic liquidated debt — a contract claim that can be calculated from the face of the writing...The classic unliquidated debt — a claim based on tort or quantum meruit — lies at the other end of the spectrum."); *cf. In re McPhillips Flying Serv., Inc.*, Case No. 25-02011-jwb, ECF No. 126 (Bankr. W.D. Mich. Oct. 29, 2025) (holding under § 101(51D) that debt

for penalty related to promissory note is liquidated, but tort-like debt under the False Claims Act is unliquidated).

In this case, unlike *Pearson* (where the court and parties could not calculate the extent to which the debt was secured or unsecured) the only reason the Debtor contends the debt to the Bank is unliquidated is because he disputes it, and because the Bank may eventually reduce its claim by applying collateral belonging to another entity.  Both factors are immaterial given the facts of this case.  Indeed, the Debtor scheduled the debt in an amount within a few dollars of the amount set forth in the Bank's Proof of Claim, suggesting no difficulty in calculating the debt.  If Mr. Bloom had scheduled the debt in an amount that, when combined with his substantial other unsecured debts, would have fallen under the eligibility threshold, we might have a different answer, but he did not.

Furthermore, the Debtor does not seriously contend that it is difficult to calculate the Bank's claim, only that his defenses and the pendency of the State Court Action make it impossible to know the amount he will eventually owe, should his defenses carry the day.

The pendency of the State Court Action is immaterial in calculating eligibility, however, because a final judicial determination of a debt is not required for a bankruptcy court to treat a debt as "liquidated" for purposes of § 109(e), just as the diversity jurisdiction of the United States District Court does not depend on the entry of judgment in the case.  *See St. Paul Indemnity Co.*, 303 U.S. at 291-92; *see also Faulhaber*, 269 B.R. at 355.

Additionally, the mere fact that Mr. Bloom has asserted defenses or disputes the Bank's claim is immaterial because accepting the argument that a disputed debt is "unliquidated" or that "affirmative defenses" might exculpate him presents the very *ipse dixit* risk that Judge Gregg (and others) long ago warned about in *Redburn* and elsewhere:

> The Debtor cannot circumvent this limitation on eligibility by simply ignoring what he knows and listing the amounts of the debts as "unknown" in his schedules. To decide otherwise would eviscerate the chapter 13 eligibility requirements.

*Redburn*, 193 B.R. at 256 (citing *In re McGovern*, 122 B.R. 712, 714 (Bankr. N.D. Ind. 1989)).

Here, although Mr. Bloom did not list the debt as "unknown" — as just noted he easily calculated the amount of the debt on Schedule E/F — he did schedule it as "unliquidated" because of the dispute, an equivocation equivalent to scheduling it as "unknown" (or $1.00 as he erroneously did in his amended "eve of hearing" Schedule E/F).

Similarly, the court rejects Mr. Bloom's argument that his debt is unliquidated because he may have contribution or indemnification claims against co-obligors. These independent rights typically associated with a suretyship relationship involving multiple obligors at most would give Mr. Bloom a claim against co-obligors to be scheduled on Schedule A/B, not a reason to challenge the Bank's independent claim.[6] And, during oral argument, counsel conceded that Mr. Bloom and his co-obligors share joint and several liability — each of them is "on the hook" for the full amount of the Bank's claim. *See* Proof of Claim 2-1, Attach. 2 (Unconditional Guarantee at ¶ 9(D)); *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1997) ("[the debtor] was liable for the full amount of the notes, regardless of the possibility that his co-obligors would eventually pay some or all of the debt. We therefore conclude that [the debtor's] debt was liquidated.").

As noted above regarding the nature of affirmative defenses,[7] such defenses typically admit the amount of a plaintiff's claim but deny liability and therefore do not affect the liquidation of the claim (at least not in the sense of calculating the amount). Moreover, the Unconditional Guarantee waived suretyship defenses, rendering immaterial any argument about application of collateral

---

[6] The court notes that although Mr. Myrick is paying the joint tax debt to the IRS, the Debtor nevertheless scheduled that debt as "liquidated." *See* Schedule E/F, at ¶ 2.1.

[7] *See* cases cited *supra* note 5.

(including the Black Owl liquor license).  Moreover, as of the petition date, the Bank has not yet disposed of the liquor license, and *Pearson* instructs the court not to concern itself with post-petition developments. *Pearson*, 773 F.2d at 756.

With respect to other defenses, the reaffirmation of the debt included within the Third Forbearance Agreement wiped the slate clean on that score, at least as of July 1, 2022.  And, with the possible exception of the Bank's foreclosure of interests in the Property (which the court regards as irrelevant in view of waiver of suretyship defenses), Mr. Bloom has not suggested either in his papers or during oral argument that the defenses he asserted in the State Court Action somehow arose after he executed the last agreement.

To be clear, the court did not conduct an evidentiary hearing regarding Mr. Bloom's eligibility but simply assessed the record the parties presented in a summary fashion, as *Pearson* contemplates.  Based on the record and the court's on-the-spot assessment, it appears to a legal certainty that Mr. Bloom is not eligible for relief under chapter 13 because his noncontingent, liquidated, unsecured debts exceed the statutory eligibility cap by more than a half million dollars (combining the Bank debt with the tax and professional debts).

## IV. CONCLUSION AND ORDER

Had Congress extended the CARES Act modifications to the chapter 13 debt limit last year, or had the Debtor filed his bankruptcy petition before the higher limits expired, he might have been eligible for relief under chapter 13, even combining his substantial debt to the Bank with his other liquidated and noncontingent liabilities for taxes and professional fees (totaling approximately $362,528.00).  But Congress and Mr. Bloom did not act in time, and the court must respect the sunsetting of the former eligibility cap.  The court must also honor Congress's decision to include

disputed debts in the eligibility calculation, even if the dispute as a practical matter would make it impossible to predict how much the Debtor will ultimately have to pay when all is said and done.

For the record, the court does not find that Mr. Bloom filed his petition in bad faith, only that his liquidated, unsecured, and noncontingent debts exceed the statutory threshold to a legal certainty on the summary record provided in connection with this eligibility dispute.  While the Debtor remains free to assert his defenses in the State Court Action, he is not free to argue in connection with a contest under § 109(e) that the defenses render his debt to the Bank unliquidated.

Finally, the parties have not advocated for conversion rather than dismissal, but conversion is an option.  11 U.S.C. § 1307(c).  Accordingly, because the court finds that the Debtor is not eligible for relief under chapter 13, it will grant the Bank's Motion, but only after affording the Debtor a brief opportunity instead to seek conversion under Bankruptcy Rule 1017(f), assuming he is eligible for relief under another chapter.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtor may seek to convert his case to another chapter under which he is eligible for relief, provided he does so within 7 days after entry of this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that if the Debtor does not file a motion or notice to convert the case within 7 days after entry of this Memorandum of Decision and Order, the court will enter a separate order dismissing the chapter 13 case on the Bank's Motion for the reasons set forth herein.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor, Michael

Patrick Hanrahan, Esq., Elizabeth Clark, Esq., chapter 13 trustee, Kelly J. Shefferly, Esq., and all entities appearing on the mailing matrix or requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 30, 2025**



Scott W. Dales
United States Bankruptcy Judge